**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TERRY COOLEY,**

        **Plaintiff,**

**v.**                            **Case No.  8:08-cv-553-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security

disability benefits.  For the reasons set out herein, the decision is affirmed.

**I.**

Plaintiff was fifty-seven (57) years of age at the time of his administrative hearing in

December 2006.  Plaintiff has a two-year degree in "business computer."  His past relevant

work was as a laborer, medical records clerk, and care giver.  Plaintiff first applied for

disability benefits in November 1996.  His date last insured for benefits was December 31,

1996.  The claim was denied initially and on reconsideration in February 1997.  Plaintiff, who

was representing himself, took no further action on that application.  In October 2003, he filed

another application for disability benefits, alleging disability as of August 14, 2000,[1] by

_____

[1]This onset date was amended to July 26, 1995, at the request of the Plaintiff.

reason of post-traumatic stress disorder ("PTSD") and problems with his shoulders and left ankle. The Plaintiff's application was denied originally and on reconsideration. (R. 51-60).

At the Plaintiff's first *de novo* hearing before an Administrative Law Judge ("ALJ") on January 12, 2006, conducted via a video teleconference, the ALJ and Plaintiff's representative performed a circular dance concerning whether Plaintiff should be permitted to produce evidence under the prior application. By Plaintiff's argument, given that his VA records revealed he was suffering from PTSD during the period before and shortly after his date last insured and the administrative denial of his first application, and Plaintiff was without representation, it was improper to afford that decision *res judicata* effect. Counsel argued that the matter should be re-opened or he should otherwise be permitted to prove that Plaintiff's mental impairments prevented him from properly pursuing his administrative remedies following the denial of his application. *See* (R. 882-904). Plaintiff was granted a second hearing, conducted via video teleconference on December 5, 2006. He testified in his own behalf and the ALJ took testimony from a medical expert and a vocational expert.

Richard Saul, M.D., the medical expert called by the ALJ, testified to a review of Plaintiff's records from the Veterans Administration ("VA") where he found diagnoses for depressive neurosis and explosive personality in 1981; adjustment disorder with mixed emotional features and sleep disturbance in 1990; PTSD, delayed onset with anger and depression, combat related in 1995; and a 1997 admission for PTSD exacerbation, major depressive disorder and anxiety. Using a psychiatric review technique form, the witness indicated the Plaintiff suffered from a 12.04 affective disorder, essentially an adjustment disorder with depressed mood, and a 12.06 anxiety disorder in the nature of PTSD. As for the

2

B criteria under the PRTF, the witness opined that the medical record suggested that Plaintiff had mild restrictions of daily living; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, and pace; and one or two episodes of decompensation of an extended duration. The witness also opined that Plaintiff did not meet any of the C criteria. While Plaintiff's impairments did not meet or equal a listing from the alleged onset date in July 1995 to the date of the hearing in January 2006, the witness testified that Plaintiff's medical history revealed a depressant element and PTSD. Upon questioning by Plaintiff's representative, the witness conceded that he may have missed two other hospitalizations due to PTSD, one in November 1996 and the other in July 1997. While this would alter his testimony concerning episodes of decompensation under the B criteria, it would not change his opinion regarding the other three criteria. (R. 908-915).

The Plaintiff testified next. He outlined his prior work as a laborer, medical records clerk, and security worker. He testified that the July 1995 onset date was selected because it was at about this point that he was no longer able to work. By his testimony, repeated surgeries on his shoulders had left him in pain and with a limited ability to lift. In the pertinent period between the alleged onset date in July 1995 and his date last insured, December 31, 1996, Plaintiff testified that he was also suffering from major depression with flashbacks. According to his testimony, he had been receiving disability benefits from the VA since the 1980's, and he was determined to be 100% disabled by reason of his PTSD in August 2001. He described the condition as causing major anger. In addition to his poor mental state, Plaintiff testified that back then, he was unable to lift more than ten pounds because of the deteriorating condition of his shoulders. By his account, he has had a total of

six surgeries on his shoulders, three on each.  The condition causes him pain, and a limited

lifting ability.  He also suffered an impairment related to his left ankle, which he testified he

had broken on three occasions.  Surgery to repair the ankle resulted in the use of bones in his

toes, and he also suffered hammer toes that affected his ability to walk.  By his account, he

could walk only 80 to 100 feet.  He testified that his feet would swell and hurt after standing

or walking for thirty minutes.  He had no problems sitting and did not have difficulty bending

or touching his toes.  In describing his daily activity during that period, he testified he would

get up from bed, shower, eat breakfast, take a small walk, clean his house, and watch

television.  He denied any socializing or hobbies.  He had difficulty sleeping at night and, as a

consequence, it was necessary for him to nap two to three times during the day for an hour.

He was given medication by the VA, which caused him to suffer dry mouth.  (R. 920-29).

Next, the ALJ took testimony from Gary Young, a vocational expert ("VE").  The

witness testified upon an assumption of an individual of Plaintiff's age, education, and work

experience, capable of light exertional work with occasional postural and reaching

limitations, but no significant limitations in handling and fingering, and no visual,

communicative, concentration, or environmental limitations.  Upon these assumptions, the VE

testified Plaintiff could perform his past work as a security guard.  The witness opined that

such person could likewise work as a records clerk as long as the only limitation was no

reaching overhead.  The VE also testified that the individual with those limitations could

perform other jobs such as locker attendant, cashier, and inspector.  If the hypothetical was

modified to show moderate limitations of concentration due to pain and a limitation to simple

routine tasks, the VE opined that Plaintiff's past work would likely be ruled out, although the

other unskilled jobs identified would be available.  If under the first hypothetical the individual's exertional capacity was limited to sedentary work, the VE opined that such individual could perform work as a surveillance systems monitor or office clerical work, such as an order clerk.  If the same mental limitations were imposed as well, these same jobs would be available.  Counsel for Plaintiff had no questions.  (R. 930-35).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of March 28, 2007, the ALJ determined that while Plaintiff had severe impairments related to a bilateral shoulder disorder, an affective disorder in the nature of an adjustment disorder with depression, and an anxiety disorder in the nature of PTSD, he nonetheless had the residual functional capacity to perform light and sedentary exertional work involving simple repetitive tasks with a limitation for no reaching overhead.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy during the period under review.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R.14-29).  The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

6

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Administrative Law Judge did not include all of the Plaintiff's limitations in his hypothetical questions to the vocational expert, and therefore, he erred in relying on the response of the vocational expert; and

(2) The Administrative Law Judge did not give great weight to the findings of the Department of Veterans Affairs that the Plaintiff was entitled to a 70% compensation rating for his mental impairment.

By his first claim, Plaintiff notes that the medical expert testified to only one or two episodes of deterioration in work-like situations. However, on cross examination, he conceded that such episodes might actually be four or more. The medical expert also testified that Plaintiff would have moderate limitations in social functioning. Despite this testimony, the hypothetical questions employed by the ALJ assumed only moderate limitations of concentration and a limitation to simple routine tasks. The ALJ failed to mention anything

regarding limitations in social functioning and failed to assume four or more episodes of decompensation in the work setting. Plaintiff urges that had the ALJ included these additional limitations, the response of the VE may have been different. Accordingly he seeks a remand for further development of the record.

In response, the Commissioner urges that the inquiry of the VE was proper and adequate in light of the express findings of the ALJ concerning this evidence. In support, the Commissioner notes that the ALJ fairly considered the evidence of record and concluded that, during the pertinent period of time, while Plaintiff had mental health issues, his treatment records suggested that he had no specific, persistent limitations on his work-related social functioning. In particular, the ALJ expressly found that Plaintiff had no "significant problems with such basic work-related social functions as tolerating contacts with the general public, co-workers, or supervisors, or working around others without distracting them or being distracted by them, or maintaining socially acceptable behavior in the workplace." (R. 26-7). Furthermore, the ALJ expressly discounted Plaintiff's claim regarding four periods of repeated episodes of decompensation in the workplace, noting that two of Plaintiff's hospitalizations were of relative short duration (less than two weeks duration) and thus only two of his hospitalizations could reasonably be construed to satisfy the regulatory definition for "repeated episodes of decompensation." *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00C4. (R. 24).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th

Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004). Here, Plaintiff's argument hinges on the appropriateness of the ALJ's discounting the two aspects of the medical expert's testimony. After careful review, I conclude that Plaintiff does not demonstrate error requiring a remand on this issue.

As the record reflects, there are voluminous medical records from the VA recording Plaintiff's medical history dating back to the late 1960's. To assist in digesting these records, the ALJ relied upon a medical expert. Here, Plaintiff was obliged to establish disability at some point between his alleged onset date in July 1995 and December 31, 1996, his date last insured. Thus, the primary focus of the ALJ's inquiry was on records reporting on this period. By the medical expert's review, the records suggested that Plaintiff suffered mild restrictions of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, and pace, by reason of his PTSD and depression. On the question of decompensation in the workplace, after some prodding by the Plaintiff's representative, the VE agreed that Plaintiff had four hospitalizations for his PTSD. Despite this testimony by the doctor, the ALJ attributed no limitations in social functioning upon his questioning of the VE and did not mention periods of decompensation. By his decision, such was unnecessary because he expressly discounted

those aspects of the medical expert's opinion.  Thus, on the basis of his own review of the

medical records, in particular, those from Plaintiff's hospitalizations in July 1995, November

1996, March 1997 and July 1997, the ALJ concluded that neither this record nor Plaintiff's

testimony substantiated any deficits in work-related social functioning for the period between

July 1995 and December 1996.

Case law in this circuit holds that "[t]he opinions of nonexamining, reviewing

physicians, . . .  when contrary to those of examining physicians, are entitled to little weight,

and standing alone do not constitute substantial evidence."  *Sharfarz v. Bowen*, 825 F.2d 278,

280 (11th Cir. 1987) (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th

Cir. 1985)).  Furthermore, "the ALJ may reject any medical opinion if the evidence supports a

contrary finding."  *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).  As this

may relate to the adequacy of questions propounded to a VE, case law holds that an ALJ need

not include findings in the hypothetical questions that the ALJ has properly rejected as

unsupported.  *Crawford,* 363 F.3d at 1161.

Here, Plaintiff's argument is founded on the apparent belief that the ALJ was

required to accept the testimony of this nonexamining medical expert.  Were that the case, a

remand for further consideration might be in order.  However, as set forth above, the opinions

of a nonexamining doctor are not entitled to any particular deference and may be discounted

when unsupported by the evidence.  Here, Plaintiff wholly fails to address, much less rebut

from the record, the fact that the ALJ discounted the testimony of the medical expert related

to limitations in social functioning.  Nor does Plaintiff demonstrate any additional functional

limitations that the ALJ should have assigned by reason of the episodes of decompensation.

As noted above, it is for the ALJ and not this court to weigh and evaluate the medical evidence. Upon this standard, and after consideration of the mental health record since in or about 1981, I am obliged to conclude that the ALJ's assessment of Plaintiff's limitations in social functioning within the workplace are supported by substantial evidence, as are the stated reasons for discounting this portion of the medical expert's testimony.[2] Having adequately discounted any limitation in social functioning, the ALJ was not required to include the same in his hypothetical questions to the VE. There being no other demonstration that the questioning of the VE was inadequate, Plaintiff is not entitled to relief on this claim.

With regard to the second claim, Plaintiff urges that the VA rating of disability, while not binding, is evidence that should be given great weight. *Olsen v. Schweiker*, 663 F2d 593, 597 n.4 (5th Cir. 1981). In factual support, Plaintiff notes that since September 1, 1997, he has received a 70% compensation rating on the basis of his PTSD. Such a rating under VA regulations reflects occupational and social impairment with deficiencies which interfere with routine activities and affect one's ability to function independently, appropriately and effectively, and to maintain effective relationships. Plaintiff urges that such a finding reflects marked limitations in the context of social security disability claims. Although his rating was effective September 1, 1997, subsequent to Plaintiff's date last insured, and despite the medical expert's testimony, it is urged that the case should be

---

[2]*See* (R. 722-23, 735, 744-45A, 758-61, 492-96, 484-87, 459-60, and 465-66). The numbering referenced in the decision appears to reflect the hand written numbering on each page.

reversed and remanded with directions that the ALJ give the September 1997, disability rating great weight.

In response, the Commissioner notes that the 70% rating was issued nine months after Plaintiff's date last insured. Thereafter, the VA determined to pay him at the 100% rate effective January 2001.[3] The rating was expressly acknowledged by the ALJ (R. 20) and was contradicted by the medical expert who found from the record only mild to moderate limitations in Plaintiff's mental capacities during the pertinent period under review.

To succeed on this claim, Plaintiff urges that a 70% VA disability rating suggests limitations in concentration and social functioning that the Social Security Administration would describe as "marked" limitations, and the court should find that it is reasonably probable that Plaintiff's mental state as of his date last insured was the same as it was nine months later when the VA rated him 70% disabled by reason of his PTSD. Again, the decision is significantly affected by the fact that Plaintiff's date last insured was December 31, 1996. By the ALJ's review and that of the medical expert, the record evidence on or before that date did not reflect marked limitations in concentration or social functioning. While it is clear that the ALJ gave little weight to the 70% disability decision, by my consideration, he was not required to in the circumstances of this case. Stated otherwise, the 70% disability rating given nine months after the date last insured, without more, does not reveal any error in the ALJ's decision. Under the applicable standard, even if relevant in

---

[3]By the VA's rating, Plaintiff had a 70% disability rating by reason of his PTSD, a 20% disability rating by reason of his shoulder, and a combined disability rating of 80%. He was paid at the 100% disability rate because the VA deemed him unemployable. (R. 68, 323).

time, a VA disability rating is not binding on the Commissioner, although it is evidence that should be given great weight. *Olson*, 663 F.2d at 597, n. 4. Here, as the ALJ noted, by reason of the medical expert's testimony and the records themselves, Plaintiff had less than moderate limitations under three of the four functional criteria of the listings. On my review, the record from Plaintiff's hospitalization in July-August 1995 indicates that at that time, Plaintiff was rated only 10% disabled by reason of his PTSD and 20% by reason of his shoulder injury. (R. 492). Nothing in the notes from the hospitalization in November 1996 suggests a significant worsening of his condition. (R. 484-85). Thus, given Plaintiff's date last insured for benefits and the evidence before the ALJ pertinent to that date, the ALJ could properly give little weight to the 70% disability rating given in September 1997. In the circumstances of this case, I find no reversible error on this issue either.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 24th day of March 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

13